UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES K. SCHMITT,

        Petitioner,

        -v-                                08-CV-0036(MAT)
                                           **ORDER**

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

        Respondent.

---

## I. Introduction

*Pro se* petitioner James K. Schmitt ("petitioner") has filed a timely petition for writ of a habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25(1)). Petitioner was convicted following a guilty plea before Judge Peter J. Broderick in Niagara County Court, and was subsequently sentenced to an indeterminate term of imprisonment of twenty years to life.

## II. Factual Background and Procedural History

On November 21, 2002, following an argument in their Lockport home, petitioner struck his wife in the head with a baseball bat, knocking her down a staircase and killing her.

Petitioner was charged with two counts of Murder in the Second Degree (N.Y. Penal L. § 125.25(1), (2)).[1] Petitioner's pre-trial

---

[1] Niagara County Indictment 2002-524 alleged that petitioner killed his wife by means of strangulation and blunt force trauma to her head, face, shoulders, hands, back, arms and wrists. Police recovered petitioner's bat, along with a bag and rope at the house. The Medical Examiner concluded that

suppression motions were denied by the county court on August 14, 2003. See Hr'g Mins. dated 5/12/2003, 5/28/2009 & 7/31/2003; Ex. B. Petitioner subsequently pleaded guilty to one count of second-degree murder, admitting that he intentionally killed his wife with a baseball bat. Plea Mins. 6-9. The court sentenced petitioner to twenty years to life in prison on October 16, 2003. Sentencing Mins. 20-21.

Through counsel, petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which unanimously affirmed his conviction. People v. Schmitt, 21 A.D.3d 1403 (4th Dept. 2006), lv. denied, 6 N.Y.3d 758 (2005).

He then filed a motion to vacate the judgment and sentence pursuant to New York Crim. Proc. L. ("C.P.L.") § 440.10 and § 440.20. Therein, petitioner alleged that: (1) he had been "induced to plead guilty on the mistaken belief that he would receive a sentence of fifteen years to life"; and (2) he received ineffective assistance of trial counsel, based upon counsel's "false promise from the court" that petitioner would be sentenced to less than twenty years on the minimum end of the sentencing range in exchange for his guilty plea. Ex. G. On May 3 and June 12, 2007, proceedings were held before Judge Broderick on petitioner's § 440 motion. The court denied petitioner's motion from the bench, and later issued a written decision with factual

---

Jean Schmitt died as a result of strangulation. See Respondent's Exhibits ("Ex.") A.

findings supporting its denial. See Hr'g Mins. dated 7/12/2003 at 8; Ex. M. Leave was denied to appeal that decision by the Fourth Department on November 7, 2007. Ex. O.

Petitioner filed the instant petition[2] for habeas corpus seeking relief on the following grounds: (1) the trial court did not honor the plea agreement when it sentenced petitioner to a twenty-year minimum term of imprisonment; and (2) petitioner received ineffective assistance of counsel because his attorney believed that the court would sentence petitioner to a minimum term of fifteen years, or, at most, to a seventeen or eighteen-year minimum sentence. Petitioner also requests that this Court conduct an evidentiary hearing. Pet. (Mem.) 9-13.

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Federal Habeas Review**

        **1.    Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or

---

[2] Petitioner filed a form petition (Dkt. #1), a supplemental petition and attatched memorandum (Dkt. #2), and a traverse (Dkt. #15). The supplemental petition (Dkt. #2) shall be referred to as the petition ("Pet.") hereinafter, as it contains the substance of petitioner's legal and factual claims.

3

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v.

Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Merits of the Petition**

    **1.  Voluntariness of Guilty Plea**

Petitioner alleges that his guilty plea was involuntary because it was induced by a "mistaken belief" or "false promise" that he would receive a sentence term of fifteen, or, at most,

seventeen or eighteen years to life imprisonment.[3] Pet. (Mem.) 12-13; Trav. 4-6. The county court denied petitioner's contention on the merits. Ex. M.

A habeas petitioner may challenge the knowing and voluntary nature of a guilty plea. Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). The voluntariness of a petitioner's guilty plea is determined by considering the totality of the circumstances surrounding the entry of the plea, Brady v. United States, 397 U.S. 742, 757 (1970), including whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the petitioner." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

A guilty plea "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances . . . .[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). That said, "[a] criminal defendant's erroneous, subjective ideas, produced by conversations with counsel, 'in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea.'" King

---

[3] Petitioner was convicted of Murder in the Second Degree, an A-I felony, which carries minimum sentence of fifteen to twenty-five years and a maximum sentence of life imprisonment. See N.Y. Penal L. § 70.00(2)(a), (3)(a)(i).

v. Cunningham, 442 F.Supp.2d 171, 183 (S.D.N.Y. 2006) (quoting Curits v. Zelker, 466 F.2d 1092, 1098 (2d Cir. 1972)). Rather, a habeas petitioner "bear[s] the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justify his mistaken impression." Curtis, 466 F.2d at 1098.

In the instant case, petitioner has not shown that the circumstances as they existed at the time of his plea would reasonably justify his belief that he would receive a sentence below twenty years on the minimum end of his sentence for second degree murder. See id. The facts contained in the record are as follows: (1) the court promised, on the record, "some consideration on the minimum" sentence term, only if it was supported by the pre-sentence investigation; and (2) that petitioner pleaded guilty knowing that he was exposed to a sentence of fifteen to twenty-five years to life in prison pursuant to New York's sentencing scheme. The plea allocution reads, in pertinent part:

| The Court: | You understand that the penalty for murder in the second degree is life imprisonment with a minimum of 15 years and a possible maximum of 25 years. I've indicated to your attorney, Mr.Violante, that in return for obviating the necessity for trial and putting the family through that experience, that you would be given some consideration on the minimum. Is that your understanding? |
|---|---|
| The Defendant: | Yes, your Honor. |

Plea Mins. at 3.

Petitioner then acknowledged that no promises were made to him other than the court's commitment that petitioner would receive, contingent upon the pre-sentence investigation, consideration on the minimum. Plea Mins. 3-4. His acknowledgment on the record carries "a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 73-74 (1977), and as such, the plea hearing establishes that petitioner was pleading guilty knowingly, voluntarily, and intelligently, as required by the Supreme Court. See Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005); see also Brady, 397 U.S. at 753. Thus, the record indicates that the circumstances of petitioner's plea, viewed objectively, did not leave any doubt that the trial court did not commit to a specific minimum sentence.[4] See Curtis, 466 F.2d at 1098. Accordingly, petitioner's claim was not rendered involuntary by his alleged misunderstanding of the proposed sentencing range. See King v. Cunningham, 442 F.Supp.2d 171, 183 (S.D.N.Y. 2006) ("Although prisoners frequently claim that their guilty pleas were based on misunderstandings, 'induced by discussions' with their lawyers, that they 'would

---

[4] During the hearings on petitioner's § 440 motion, the trial court denied that it ever made a sentence promise that petitioner would receive a specific minimum sentence, stating it was not the court's policy "to commit unless everyone agrees". The court then went on to say that no discussions were held with the victim's family and consequently no agreement was ever made. Hr'g Mins. dated 6/12/2007 at 5-8. Likewise, the prosecuting attorney stated, in an affidavit, that she had no recollection of any plea commitment as alleged by petitioner. Ex. L. In the county court's decision denying petitioner's motion, the trial court observed that "the very ambiguity of such a claim [that petitioner believed he would be sentenced to a term of 15, 17, or 18 years to life] belies the defendant's claim that such a specific bargain was struck." Ex. M at 3.

8

receive a lesser sentence than that ultimately imposed ..., this has repeatedly been held insufficient to warrant the issuance of a writ.'") (citing Curtis, 466 F.2d at 1098).[5]

Although the Court finds that petitioner was indeed sentenced as promised by the county court (receiving "consideration" on the minimum sentence), the totality of the circumstances surrounding petitioner's guilty plea also confirms that it was knowing, intelligent, and voluntary. Brady, 397 U.S. at 757. Prior to entering his plea, petitioner confirmed in open court that: (1) he had not been threatened or intimated into taking his plea, that his mind was clear and he understood his actions; (2) he was not under the influence of drugs or alcohol, or any mental disability; (3) he had sufficient time to discuss the matter with counsel, who had explained the consequences of the plea; and (4) he took his plea "freely and voluntarily after full consultation with [his] attorney." Plea Mins. 3-5. After being informed that he was exposed to a maximum sentence of twenty-five years to life, he admitted that he intentionally killed his wife with a baseball bat. Plea Mins. 2-3, 6-9.[6] Petitioner's guilty plea was in all respects

---

[5] In denying petitioner's § 440 motion, the county court observed that if petitioner had gone to trial, he would have faced overwhelming evidence of his guilt, and would have likely received a twenty-five-year minimum sentence if found guilty. As a result of petitioner's plea, petitioner received a significant five-year reduction of his minimum sentence term. Ex. M at 1; Hr'g Mins. dated 6/12/2007 at 8; Ex. A; Ex. B at 11-12; Sentencing Mins. at 2-6.

[6] It is worth noting that petitioner did not object when he ultimately received a minimum term of twenty years imprisonment at sentencing. Sentencing Mins. at 21; Ex. M at 3-4. Rather, petitioner brought his motion to vacate the judgment over three years after the sentence was imposed and two

voluntary, as the county court correctly found, and its decision was not contrary to, nor an unreasonable application of Supreme Court law.

## 2. Ineffective Assistance of Counsel

Petitioner's assertion that he was denied the effective assistance of counsel based on his attorney's "mistaken belief" that if petitioner pleaded guilty, he would be sentenced to the minimum allowed by law, fifteen years to life. Pet. (Mem.). 9-10. This claim was denied on the merits by the § 440 court. See Ex. M at 5.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable

---

years after the Fourth Department affirmed his conviction.

professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

During plea negotiations, counsel must correctly inform the defendant of his maximum sentencing exposure if he were to be convicted after trial, see United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) and must inform his client about the terms of a plea offer. See Boria v. Keane, 99 F.3d 492, 498 (2d Cir. 1996). However, an erroneous estimate by counsel as to the minimum sentence exposure will not undercut an otherwise voluntary plea or constitute ineffective assistance of counsel. See, e.g. LaFay v. Fritz, 455 F.2d, 302-303 (2d Cir.) cert. denied, 407 U.S. 923 (1972); Scott v. Mancusi, 429 F.2d 104, 108 (2d Cir. 1970), cert. denied, 402 U.S. 909 (1971).

Here, there is nothing in the record to suggest that petitioner's counsel ever misinformed his client regarding the sentence to which he was exposed under New York law. The plea minutes make clear that petitioner knew when he pleaded guilty that he faced a sentence ranging from fifteen to twenty-five years to life imrprisonment. Plea Mins. 2-3. Also absent from the record is any negotiated plea agreement. Ex. H at 1-2; Ex. I, ¶¶ 9, 11, 12. It appears that both counsel and petitioner had hoped that

petitioner would receive a lesser sentence than twenty years to life, and both anticipated a sentence less than twenty-five years to life. This is insufficient to establish a constitutional infirmity.

Petitioner relies on the Second Circuit's decision in Mosher v. Lavallee, 491 F.2d 1346 (2d Cir. 1974), in support of his contention that he was induced by a false promise by his attorney to enter a plea of guilty. Trav. at 4, 7-8. In Mosher, the Second Circuit found that counsel was ineffective where he had affirmatively stated to the petitioner that the court had promised that petitioner would receive a minimum sentence of fifteen to sixteen years in exchange for his plea, even though the trial court had not so promised, ultimately sentencing the petitioner to forty to sixty years instead. Mosher, 491 F.2d at 1347; see also Mosher v. LaVallee, 351 F.Supp. 1101 (S.D.N.Y. 1972). Such is not the case here. There is no evidence that petitioner's counsel stated that the court actually promised petitioner a lesser minimum sentence term; both petitioner and his counsel testified that counsel initially told petitioner only that the court had "indicated" that it was "inclined to give the minimum sentence" in exchange for a guilty plea. Ex. H at 1, Ex. I ¶ 12. These are not words of promise, and, so framed, do not suggest that counsel told petitioner that he was guaranteed a minimum sentence term of fifteen to eighteen years. See Scott, 429 F.2d at 108 ("The

representations made by counsel to Scott were couched in the language of hope rather than of promise and were merely estimates made in good faith as to what he thought would result when the letter from the parole authorities was received."). To the extent that petitioner misunderstood his counsel's statements to convey a guarantee that he would receive a specific sentence term, his misunderstanding was objectively unreasonable on this record. See Curtis, 466 F.2d at 1098; see supra Part III.B.1.

In sum, petitioner cannot establish that he suffered prejudice as a result of his counsel's alleged failures. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). In light of the evidence that petitioner would have faced had he gone to trial[7], he cannot show that but for his attorney's deficient representation, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; See Ex. M at 1-4; Ex. A; Ex. B at 11-12; Sentencing Mins. 2-6. The state court's rejection of petitioner's ineffective assistance of counsel claim was not contrary to, nor an unreasonable application of Strickland and its progeny. Accordingly, petitioner's related claims that his plea was involuntary and that his counsel was ineffective are hereby denied.

---

[7] In denying petitioner's § 440 motion, the county court found that if petitioner had gone to trial, he would have faced overwhelming evidence of his guilt, and would have likely received a twenty-five-year minimum sentence if found guilty. As a result of petitioner's plea, petitioner received a significant five-year reduction of his minimum sentence term. Ex. M at 1; Hr'g Mins. dated 6/12/2007 at 8; Ex. A; Ex. B at 11-12; Sentencing Mins. at 2-6.

13

### 3. Request for Evidentiary Hearing

Petitioner also requests an evidentiary hearing. Pet. at 10, (Mem.) 13. "A district court has broad discretion to hear further evidence in habeas cases." Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999) (citing Townsend v. Sain, 372 U.S. 293, 318 (1963)). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (ellipsis in original) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.")

As discussed above, even if petitioner's factual allegation that he misunderstood the potential minimum sentence arising out of his guilty plea, that fact would still not render petitioner's plea involuntary. See Curtis, 466 F.2d at 1098. It similarly does not establish that his attorney affirmatively misled the petitioner to believe that a lesser sentence was guaranteed. See Mosher, 491 F.2d at 1347. The factual issues surrounding petitioner's claims

were thoroughly litigated in state court, including two proceedings arising out of petitioner's § 440 motions. The factual findings of the state court are presumed to be correct, and petitioner has not presented clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Consequently, there is no need for an evidentiary hearing in this case because it is abundantly clear from the record that petitioner's claims have no merit and that there are no grounds for habeas relief.

Because petitioner has made no showing that his claim relies on "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2), the request for an evidentiary hearing is denied.

**IV. Conclusion**

For the reasons stated above, James Schmitt's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from

this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                          S/Michael A. Telesca
                            _____
                                          MICHAEL A. TELESCA
                               United States District Judge

Dated:    June 14, 2010
           Rochester, New York